IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DAVID KLOSSNER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:25-cv-3251-G-BN |
| | § | |
| ZURICH AMERICAN INSURANCE COMPANY and AMERICAN ZURICH INSURANCE COMPANY, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

Senior United States District Judge A. Joe Fish referred the case to the undersigned United States magistrate judge under 28 U.S.C. § 636(b)(1) and a standing order of reference. *See* Dkt. No. 3.

Defendant Zurich American Insurance Company asks the Court to dismiss Plaintiff David Klossner's claims under Federal Rule of Civil Procedure 12(c). *See* Dkt. No. 34. After briefing concluded on the 12(c) Motion, *see* Dkt. Nos. 38 & 39, Klossner, proceeding *pro se*, filed a Motion for Leave to File Limited Sur-Reply [Dkt. No. 45] to address alleged new arguments introduced by Zurich in its reply.

The undersigned denies Klossner's Motion for Leave to File Limited Sur-Reply [Dkt. No. 45] and enters these findings of fact, conclusions of law, and recommendation that the Court should grant Zurich's motion [Dkt. No. 34].

**Background**

This case concerns an insurance coverage claim arising from an industrial facility lease. Klossner's LLC, KDA Realty LLC, owns an industrial facility located at 5221 South Cleveland-Massillon Road, Norton, Ohio. *See* Dkt. No. 31 at 1-2. KDA leased this property to Kyoto Cooling North America LLC. *See id.* at 1.

As part of the lease agreement, KDA required Kyoto Cooling to maintain insurance naming KDA as an additional insured and loss payee to cover the leased premises and KDA's personal property there. *See* Dkt. No. 31 at 2; Dkt. No. 31-1 at 15. Zurich issued the insurance policy to Kyoto Cooling. *See* Dkt. No. 31-1 at 53.

Klossner alleges that a 75-ton overhead crane that he, not KDA, owns was damaged during Kyoto Cooling's operations at the facility. *See* Dkt. No. 31 at 2. Klossner filed a claim with Zurich to recover for the damages. *Id.*

Klossner alleges that Zurich did not pay his claim, but paid Kyoto Cooling for property damage at the facility and refused to cooperate with his requests for policy declarations. *See* Dkt. No. 31-1 at 345-90.

Neither KDA nor Kyoto Cooling is a party to this action. Klossner, KDA's sole individual member, *see* Dkt. No. 45-3 at 1, sues in his individual capacity. *See* Dkt. No. 31 at 2. Klossner contends that he is a third-party, or intended, beneficiary of Zurich's insurance coverage to Kyoto Cooling because the policy names KDA as an additional insured, and that he should therefore be covered under the policy as the entity's owner. *See* Dkt. No. 31 at 1.

Klossner also contends that the policy covers the crane because it reaches

"personal property of others" in Kyoto Cooling's "care, custody, or control." *Id.* at 2.

Klossner finally contends that Zurich negligently refused to investigate the crane's proper ownership and acted in bad faith when handling his claim by failing to disclose Kyoto Cooling's declarations. *See* Dkt. No. 31 at 3.

Klossner claims relief from Zurich for (1) breach of contract as a third-party beneficiary; (2) negligence and bad-faith claim handling; and (3) fraudulent concealment, improper payment, and equitable relief. *See* Dkt. No. 31 at 4. The undersigned addresses each claim in turn and recommends dismissing each of them for failure to state a claim.

KDA also seeks to recover for the crane's damage and has filed suit in the Court of Common Pleas, Summit County, Ohio. *See* Dkt. No. 35 at 10; *see also* Dkt. No. 41 at 6. In its reply to the motion to dismiss briefing, Zurich represents that KDA alleges ownership of the crane and that Klossner "flip-flops" crane ownership depending on the litigation. Dkt. No. 41 at 2, 6. Klossner filed a Motion for Leave to File Limited Sur-Reply to address this allegation. *See* Dkt. No. 45 at 1. The motion is fully briefed. *See* Dkt. Nos. 46 & 47.

## I. <u>Klossner's Motion for Leave to File Sur-Reply</u>

> "Neither the local rules of [this district] nor the Federal Rules of Civil Procedure allow a party to file a surreply as a matter of right." *Corbello v. Sedgwick Claims Mgmt. Servs., Inc.*, 856 F. Supp. 2d 868, 890 (N.D. Tex. 2012); *see also* N.D. TEX. L. CIV. R. 7.1. Because the rules do not provide for surreplies as a matter of right, the district court only accepts such filings "in exceptional or extraordinary circumstances." *Lacher v. West*, 147 F. Supp. 2d 538, 539 (N.D. Tex. 2001) (mem.).

*Gezu v. Charter Commc'ns*, 17 F.4th 547, 555-56 (5th Cir. 2021) (cleaned up).

"The restrictions against surreplies and against new arguments raised for the first time in a reply brief are imposed by the court and may not be waived by the parties," and "[t]he court will not permit the parties to continue arguing the merits beyond the scope provided for in the local rules, absent exceptional circumstances, no matter how much they wish to do so." *Lacher*, 147 F. Supp. 2d at 540 n.2.

And, so, "[o]rdinarily, sur-replies are 'heavily disfavored,' and the decision to allow a sur-reply lies within the district court's discretion." *Ga. Firefighters' Pension Fund v. Anadarko Petroleum Corp.*, 99 F.4th 770, 774 (5th Cir. 2024) (quoting *Butler v. S. Porter*, 999 F.3d 287, 297 (5th Cir. 2021)).

"But when a party raises new arguments or evidence for the first time, the district court must either give the other party an opportunity to respond or decline to rely on the new arguments and evidence." *Id.* (citations omitted).

In its reply, Zurich represents that KDA alleges ownership of the crane in its Ohio lawsuit and that Klossner "flip-flops" his representation of crane ownership depending on which court he is litigating in. *See* Dkt. No. 41 at 2. In his Motion for Leave to File Limited Sur-Reply, Klossner claims this amounts to a new allegation that Klossner "deliberately misled a court and adopted an ownership position for improper litigation purposes," *see* Dkt. No. 45 at 1, and that he should be afforded an opportunity to address it.

The undersigned agrees with Zurich that what Klossner identifies is not genuinely a new argument, *see* Dkt. No. 46, and denies Klossner's Motion for Leave

to File a Limited Sur-Reply [Dkt. No. 45].

## II. Zurich's Motion to Dismiss

### Legal Standard

Because Zurich moved for dismissal after answering Klossner's complaint, its request under Rule 12(b)(6) is untimely, but that request may still be construed as one for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). *See Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999). "A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Robinson v. Midland Cnty., Tex.*, 80 F.4th 704, 709 (5th Cir. 2023) (cleaned up).

In deciding a motion to dismiss for failure to state a claim on which relief may be granted under Rule 12(b)(6), the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007).

Such a motion is therefore "not meant to resolve disputed facts or test the merits of a lawsuit" and "instead must show that, even in the plaintiff's best-case scenario, the complaint does not state a plausible case for relief." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020).

Even so, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the

speculative level," *id.* at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

So, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up; quoting *Twombly*, 550 U.S. at 557); *see also Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) ("A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" (quoting *Iqbal*, 556 U.S. at 679)); *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) ("Where the well-pleaded facts of a complaint do not permit a court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" (quoting *Iqbal*, 556 U.S. at 678 (quoting, in turn, FED. R. CIV. P. 8(a)(2)))).

As these cases reflect, Federal Rule of Civil Procedure 8(a)(2) does not mandate detailed factual allegations, but it does require that a plaintiff allege more than labels and conclusions. And, while a court must accept a plaintiff's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Consequently, a threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.*; *Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) ("[T]he court does not 'presume true a number of categories of statements, including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement.'" (quoting *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1162-63 (5th Cir. 2021))).

In sum, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, plaintiffs must "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *see also Inclusive Communities*, 920 F.3d at 899 ("'Determining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (quoting *Iqbal*, 556 U.S. at 679; citation omitted)).

"*Pro se* complaints receive a 'liberal construction.' Even so, 'mere conclusory allegations on a critical issue are insufficient.'" *Brown v. Tarrant Cnty., Tex.*, 985 F.3d 489, 494 (5th Cir. 2021) (quoting *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018), then *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989) (per curiam)). And "liberal construction does not require that the Court . . . create causes of action where

there are none." *Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013).

"To demand otherwise would require the 'courts to explore exhaustively all potential claims of a *pro se* plaintiff'" and would "'transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party.'" *Jones v. Mangrum*, No. 3:16-cv-3137, 2017 WL 712755, at *1 (M.D. Tenn. Feb. 23, 2017) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

And a plaintiff may not amend his allegations through a response to a motion to dismiss. "[A] claim for relief" must be made through a pleading, FED. R. CIV. P. 8(a), and a response to a motion is not among the "pleadings [that] are allowed" under the Federal Rules of Civil Procedure, FED. R. CIV. P. 7(a); *see, e.g.*, *Klaizner v. Countrywide Fin.*, No. 2:14-cv-1543 JCM (PAL), 2015 WL 627927, at *10 (D. Nev. Feb. 12, 2015) ("All claims for relief must be contained in a pleading. A response to a motion is not a pleading and it is improper for the court to consider causes of action not contained in the pleadings." (citations omitted)).

That said, Federal Rule of Civil Procedure 15 requires that leave to amend be granted freely "when justice so requires." FED. R. CIV. P. 15(a)(2). And, because this rule provides a "strong presumption in favor of granting leave to amend," *Fin. Acquisition Partners, LP v. Blackwell*, 440 F.3d 278, 291 (5th Cir. 2006), the Court must do so "unless there is a substantial reason to deny leave to amend," *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. Nov. 1981).

One reason is futility: "If the complaint, as amended, would be subject to dismissal, then amendment is futile and the district court [is] within its discretion to deny leave to amend." *Martinez v. Nueces Cnty., Tex.*, 71 F.4th 385, 391 (5th Cir. 2023) (quoting *Ariyan, Inc. v. Sewage & Water Bd. of New Orleans*, 29 F.4th 226, 229 (5th Cir. 2022)).

A federal court sitting in diversity applies the substantive law of the forum state. *See Weaver v. Metro. Life Ins. Co.*, 939 F.3d 618, 626 (5th Cir. 2019) ("As this is a diversity case, [the court] interpret[s] the contract at issue under Texas law." (alterations in original) (citation omitted)); *see also ISS Aviation, Inc. Wyoming v. Bell Textron, Inc.*, No. 24-10063, 2025 WL 400034, at *4 (5th Cir. Feb. 5, 2025), *cert. denied sub nom. ISS Aviation, Inc. v. Bell Textron, Inc.*, 145 S. Ct. 2779 (2025); *Gonzalez v. Denning*, 394 F.3d 388, 392 (5th Cir. 2004).

Both parties assert claims and defenses under Texas law. Klossner characterizes this dispute as "governed by Texas law." Dkt. No. 5 at 8. And Zurich relies on Texas law in its motion to dismiss. *See* Dkt. No. 34 at 2. So the undersigned applies Texas law.

## Analysis

### A. Breach of Contract Claim

Klossner contends that he is a third-party beneficiary of Kyoto Cooling's insurance coverage that names KDA as an additional insured. The undersigned disagrees for the following reasons.

Generally, a contract's benefits and burdens belong solely to the contracting parties, and "no person can sue upon a contract except he be a party to or in privity with it." *First Bank v. Brumitt*, 519 S.W.3d 95, 102 (Tex. 2017) (quoting *House v. Hous. Waterworks Co.*, 88 Tex. 233, 31 S.W. 179, 179 (1895)).

The third-party beneficiary doctrine is an exception to this general rule. *First Bank*, 519 S.W.3d at 102; *see MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999).

Third-party status depends solely on the contracting parties' intent. *First Bank*, 519 S.W.3d at 102; *Stine v. Stewart*, 80 S.W.3d 586, 589 (Tex. 2002).

The party seeking to establish third-party status must demonstrate that the contracting parties "intended to secure a benefit to that third party" and "entered into the contract directly for the third party's benefit." *First Bank*, 519 S.W.3d at 102 (quoting *Stine*, 80 S.W.3d at 589). Whether the third party intends or expects to benefit from the contract is immaterial. *Id.*; *see also S. Methodist Univ. v. S. Cent. Jurisdictional Conf. of the United Methodist Church*, 716 S.W.3d 475, 490-91 (Tex. 2025) (explaining that absent express contractual rights, the contracting parties expecting the contract to benefit a third party did not grant it third-party status). Only the contracting parties' intent matters. *First Bank*, 519 S.W.3d at 102.

Courts may not presume the necessary intent. *First Bank*, 519 S.W.3d at 103. To the contrary, courts "must begin with the presumption" that the parties contracted solely "for themselves," and only clearly expressing the intent to create a third-party beneficiary can overcome that presumption. *First Bank*, 519 S.W.3d at 103 (quoting

*Corpus Christi Bank & Tr. v. Smith*, 525 S.W.2d 501, 503-04 (Tex. 1975)).

If the contract's language leaves any doubt about the parties' intent, those "doubts must be resolved against conferring third-party beneficiary status." *First Bank*, 519 S.W.3d at 103 (quoting *Tawes v. Barnes*, 340 S.W.3d 419, 428 (Tex. 2011)).

To determine whether the contracting parties intended to directly benefit a third party, courts are confined to the contract's language construed as a whole. *See First Bank*, 519 S.W.3d at 103. A third party may sue only if the contract expressly grants it contractual rights. *S. Methodist Univ.*, 716 S.W.3d at 490; *accord City of Hous. v. Williams*, 353 S.W.3d 128, 145-46 (Tex. 2011) (holding third-party beneficiary status where the contract's stated purpose was to benefit specific third parties); *Stine*, 80 S.W.3d at 589-90 (holding third-party beneficiary status where the contract expressly provided that the parties intended to satisfy a specific outstanding debt to a particular third party). Absent clear and unequivocal language, the presumption controls. *First Bank*, 519 S.W.3d at 103 (citing *Tawes*, 340 S.W.3d at 428).

Here, reading the policy, no express, unambiguous term evidences an intent to benefit Klossner directly. KDA's coverage as an additional insured does not extend to Klossner in his individual capacity, absent express language, because an LLC is a legal entity separate from its members. Tex. Bus. Orgs. Code Ann § 101.106(b). The policy's designation of KDA confers rights only on KDA. Nothing in the policy names Klossner or extends KDA's additional-insured status to its members. Absent policy

language, the presumption is that the parties – Zurich and Kyoto Cooling– contracted solely for themselves.

In support of his argument, Klossner points to the policy's definition of covered "personal property," which includes "personal property of others in [Kyoto Cooling's] care, custody, or control." Dkt. No. 31-1 at 100; *see also* Dkt. No. 31 at 2, 4. This language alone is insufficient to confer third-party status on Klossner. It contains no "clear and unequivocal" expression of an intent by Zurich and Kyoto Cooling to benefit Klossner. *First Bank*, 519 S.W.3d at 103. "A court will not create a third-party beneficiary contract by implication." *MCI*, 995 S.W.2d at 651.

But even if "personal property of others" demonstrated the necessary expression of intent, the use of that language does not support a breach of contract claim. The language also appears in Section J, "Loss Payment," of the policy's Commercial Property Conditions. *See* Dkt. No. 31-1 at 83, 85-86. Subsection 7 provides that payment for loss or damage to "'personal property of others' may be to the account of the owner of the property." *Id.* at 86. This language is discretionary. And other language in the same section supports interpreting it as discretionary.

Subsection 4 of the policy declines extending coverage to unexpressed third parties, such as Klossner: "no rights or benefits to any other person or organization, unless otherwise provided." *Id.* at 85. And third parties may not bring claims on their own behalf: "Any claim for loss . . . must be presented by [Kyoto Cooling]." *Id.* Again, it emphasizes that extending the policy to others is discretionary: "At our option, we may adjust the loss with the owners of lost or damaged property if other than you."

*Id.* These provisions show that extending policy coverage to Klossner, at Zurich's discretion, was possible. But they do not establish Klossner's right to a breach of contract claim.

The policy's Commercial General Liability Coverage Form uses similar language, but only to limit coverage. Its "Damage to Property" exclusion provides that the insurance does not apply to "property damage" to "[p]ersonal property in the care, custody or control of the insured." Dkt. No. 31-1 at 242; *see id.* at 238-39. This limiting language does not confer coverage on Klossner.

Klossner also identifies no statute or other legal rule that confers third-party beneficiary status here. "'A statutory or other legal rule' could trump the general rules governing third-party-beneficiary status." *S. Methodist Univ.*, 716 S.W.3d at 490 (quoting *First Bank*, 519 S.W.3d at 102). A statute that confers that status, combined with sufficient indicia in the contract, justifies third-party status. *S. Methodist Univ.*, 716 S.W.3d at 490. Klossner does not identify a statute that confers third-party beneficiary status, and the Court is otherwise not aware of such statute.

Because the policy contains no language that clearly expresses an intent to benefit Klossner directly, and because the provisions on which he relies do not create a contractual obligation, Klossner has failed to plausibly allege that he may enforce the policy as an insured or third-party beneficiary.

Because Klossner appears to have pleaded his best case on this claim, the Court should dismiss Klossner's breach of contract claim for failure to state a claim

with prejudice.

**B. Negligent Claim Handling Claim**

Klossner alleges that Zurich negligently handled his claim by refusing to investigate the crane's ownership. *See* Dkt. No. 31 at 3.

Texas law recognizes no such claim.

Under Texas law, the only duties an insurer owes its insured are: (1) the duty to act in good faith and deal fairly, and (2) the duties imposed by the parties' contract. *Rooters v. State Farm Lloyds*, 428 F. App'x 441, 448 (5th Cir. 2011); *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 460 (5th Cir. 1997). Texas law does not recognize a cause of action for negligent claim handling. *Rooters*, 428 F. App'x at 448; *Northwinds Abatement, Inc. v. Emps. Ins. of Wausau*, 258 F.3d 345, 352 (5th Cir. 2001); *Higginbotham*, 103 F.3d at 460.

Because insurers owe third parties only contractually imposed duties, negligence claims fall within breach of contract unless a tort claim is actionable. *Higginbotham*, 103 F.3d at 460.

The Texas Supreme Court has explained that an action sounds in tort "[i]f the defendant's conduct … would give rise to liability independent of the fact that a contract exists between the parties." *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991).

As explained above, no contractual relationship exists between Klossner and Zurich because neither the third-party beneficiary doctrine nor the policy terms apply. Klossner's claim does not give rise to an independent tort.

And, so, Klossner has not pleaded a recognized cause of action under Texas law, and the Court should dismiss Klossner's negligent claim handling claim with prejudice.

**C. Bad-faith Claim Handling and Fraudulent Concealment Claims**

The Texas Supreme Court has held that "there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered." *Chrysler Ins. Co. v. Greenspoint Dodge of Houston, Inc.*, 297 S.W.3d 248, 253-54 (Tex. 2009).

The absence of policy coverage precludes liability for common-law and statutory bad-faith claims. *See Rooters v. State Farm Lloyds Ins. Co.*, No. 3:09-cv-0225-M, 2010 WL 3269806, at *5 (N.D. Tex. Feb. 16, 2010), *aff'd*, 428 F. App'x 441 (5th Cir. 2011); *see Justice v. State Farm Lloyds Ins. Co.*, 246 S.W.3d 762, 765 (Tex.App.-Houston 2008). There is "no liability under [the Insurance Code] if there is no coverage under the policy." *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 491 (Tex. 2018) (quoting *State Farm Lloyds v. Page*, 315 S.W.3d 525, 532 (Tex. 2010)).

Without express third-party coverage, Zurich had no contractual or common-law duty to Klossner.

And, so, Zurich had no obligation to disclose Kyoto's policy coverage.

And, so, the Court should dismiss Klossner's bad-faith claim handling and fraudulent concealment claims with prejudice.

**D. Improper Payment and Equitable Relief**

Klossner's improper-payment theory rests on the premise that Zurich owed

him the policy's benefits and wrongly paid them to Kyoto Cooling. *See* Dkt. No. 31 at 4.

Because Klossner has no rights under the policy, that premise fails.

His request for equitable relief also requires an underlying claim, and Klossner pleads none.

The Court should dismiss these claims with prejudice.

**Recommendation**

The Court should grant Defendant Zurich American Insurance Company's Motion to Dismiss [Dkt. No. 34] and dismiss with prejudice Plaintiff David Klossner's claims.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v.*

*United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: October 20, 2026



DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE